# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

BAUTISTA CAYMAN ASSET COMPANY,

Plaintiff,

v.

J.A.M.A. DEVELOPMENT CORPORATION, ET AL.

Defendants.

CASE NO. 16-2901 (GAG)

## OPINION AND ORDER

Bautista Cayman Asset Company filed a complaint for collection of monies, execution of pledge, and foreclosure of mortgage against J.A.M.A. Development Corporation, Antonio Molina-Santos, Aida C. Machargo-Chardón, their conjugal partnership, the estate of Abraham Jiménez-Rivera, Nelly Rivera-Cano, the conjugal partnership Jiménez-Rivera, and Johanne Jiménez-Rivera, Marangely Jiménez-Rivera, and Linda Jiménez-Rivera as members of the estate of Abraham Jiménez-Rivera.[1] (Docket No. 1). On November 13, Bautista Cayman moved for summary judgment. (Docket No. 79). J.A.M.A. opposed the motion, defendants Molina-Machargo joined, and defendants Jiménez-Rivera did not respond. (Docket Nos. 82; 84). For the reasons discussed, Bautista Cayman's motion is **GRANTED**.

   **I.    Local Rule 56**

Local Rule 56(c) instructs that "[a] party opposing a motion for summary judgment shall submit *with its opposition* a separate, short, and concise statement of material facts." L. Cv .R. 56(c) (emphasis added). This opposing statement "shall admit, deny or qualify the facts supporting the motion for summary judgment *by reference to each numbered paragraph* of the moving party's

---

[1] These three parties were terminated on April 3, 2017.

**Civil No. 16-2901 (GAG)**

statement of material facts." Id. (emphasis added). The references matter because they "allow the court to easily determine the disputed facts." Malave–Torres v. Cusido, 919 F. Supp. 2d 198, 207 (D.P.R. 2013). Moreover, "a party's denial or qualification of a proposed fact *must be strictly limited to the issue therein raised.*" Natal Perez v. Oriental Bank & Tr., 291 F. Supp. 3d 215, 219 (D.P.R. 2018) (citing Acevedo–Padilla v. Novartis Ex Lax, Inc., 740 F. Supp. 2d 293, 298 (D.P.R. 2010)) (emphasis added). Finally, the opposing party "shall support each denial or qualification by a record citation." Id. If the facts are not properly controverted, they shall be deemed admitted. L. Cv .R. 56(e).

Local Rule 56 procures "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González–Toro, 520 F.3d 58, 62 (1st Cir. 2008). "It prevents parties from 'improperly shift[ing] the burden of organizing the evidence presented in a given case to the district court.'" Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 31 (1st Cir. 2010) (citing Mariani–Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007)). Therefore, "the rule is important to the functioning of the district court," and the First Circuit has consistently held that litigants ignore it at their peril. Id.; Caban Hernandez v. Philip Morris USA, Inc., 486 F. 3d 1, 7 (1st Cir. 2007).

Bautista Cayman filed a statement of uncontested material facts ("SUMF") with its motion for summary judgment. (Docket No. 80). J.A.M.A. did not file an opposition that admits, denies, or qualifies each of Bautista Cayman's facts with reference to each numbered paragraph, as Local Rule 56 requires. In its response memorandum, J.A.M.A. merely claims that uncertainty exists as to the amounts owed and a broken tract of loan holders. (Docket No. 82 at 2). Hence, Bautista Cayman correctly points out in its reply that J.A.M.A. failed to deny any of its statements of uncontested material facts. (Docket No. 94 at 2). In an effort to correct its mistake, J.A.M.A. filed a sur-reply where it accepted, qualified, or denied Bautista Cayman's SUMF with reference to each numbered paragraph. However, J.A.M.A. sprinkled each with legal argumentation, and still deprived many assertions of citations to the record. See Docket No. 101.

The Court deems Bautista Cayman's SUMF as uncontroverted. First, Local Rule 56 clearly states that J.A.M.A. had to submit his admissions, qualifications, or denials "with its opposition," not its sur-reply. L. Cv. R. 56(c). Even if the Court considered its sur-reply as a valid opposition to Bautista Cayman's SUMF, the Court would still be compelled to disregard it. The opposition must "support *each* denial or qualification by a record citation." Id. (emphasis added). Yet J.A.M.A. frequently fails to provide a citation. See, e.g. Docket No. 101 at ¶ 19. Moreover, the denials or qualifications also "must be strictly limited to the issue therein raised." Natal-Perez, 291 F. Supp. 3d at 219. Instead, J.A.M.A. intermingles factual disputes with arguments. See, e.g., Docket No. 101 ¶ 21 ("The agreement referred to as the Bill of Sale falls absolutely short of being all Bautista Cayman needed to acquire the rights of all contract, credit facilities, and collateral documents mentioned by Bautista Cayman in its MSJ, except for the negotiable instruments."). Hence, J.A.M.A. did not comply with the rules once, but twice. Therefore, as allowed by Local Rule 56(e), the Court shall deem Bautista's SUMF as admitted because they were improperly controverted. Id. (e).

## II. Relevant Factual Background

In 2015, the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Doral Bank and appointed the FDIC as its receiver. (Docket No. 80 ¶ 1). On March 27, 2015, the FDIC and Bautista Finance Holdings, LLC signed a bill of sale. (Docket No. 94-1). The bill sold, assigned, and conveyed real estate assets to Bautista REO PR Corp. and the non-real estate assets to Plaintiff Bautista Cayman. Id.

**Commercial Loan**

On October 7, 2008, Doral Bank and J.A.M.A. executed a loan agreement ("Loan Agreement 1") for $2,724,025.00. (Docket No. 80 ¶ 1). Loan Agreement 1 included an annual interest rate of eight percent and an annual default interest rate of two percent in excess of the applicable annual rate. Id. It was scheduled to mature on October 7, 2011. Id.

**Civil No. 16-2901 (GAG)**

A promissory note ("Promissory Note 1") issued on October 7, 2008, evidenced the amount owed under Loan Agreement 1. Id. ¶ 9. Promissory Note 1 is payable to Doral and endorsed to Bautista Cayman. Id. Hence, Bautista Cayman holds the promissory note and the security for the loan agreement. Id. ¶ 10.

On July 2, 2013, Doral and J.A.M.A. executed an Amended and Restated Term Loan Agreement. Id. ¶ 11. The total amount of principal and interest due were $2,571,796.67 of principal and $496,307.97 of interest. Id. A second and third promissory note ("Promissory Note 2" and "Promissory Note 3"), both endorsed to Bautista, evidenced the amounts owed. Id. ¶¶ 12-13.

**Mortgage**

Loan Agreement 1 is guaranteed by a mortgage note payable to the bearer, endorsed to Bautista Cayman, for $4,0000,000.00. Id. ¶ 14. Bautista Cayman, at the time of filing, owns and holds the mortgage note. Id. ¶ 16. The mortgage note is guaranteed by a mortgage that encumbers two properties ("Property A" and "Property B") duly recorded in the Puerto Rico Property Registry for Guaynabo, where J.A.M.A. appears as its owner. Id. ¶¶ 17-20. The mortgage secures the mortgage note's obligations, as well as J.A.M.A.'s other obligations. Id. ¶ 15.

**Collateral Documents**

On the same day that Doral and J.A.M.A. executed Loan Agreement 1, Molina-Machargo, J.A.M.A., and Doral executed an indemnity agreement ("Indemnity Agreement 1"). Id. ¶ 21. Also on that day, Jiménez, Rivera-Cano, J.A.M.A., and Doral executed an identical indemnity agreement ("Indemnity Agreement 2"). Id. ¶ 22. Indemnity Agreement 1 stated that Molina-Machargo, jointly and severally, agreed, at their sole cost and expense, to indemnify and hold the creditor harmless against and from any adverse result or proceeding that could result from any hazardous materials on, in, under or affecting the Properties, or any expenses resulting from the existence of such material on the aforesaid premises. Id. ¶ 21. Indemnity Agreement 2 stated the same but for Jiménez and Rivera-Cano. Id. ¶ 22.

4

**Civil No. 16-2901 (GAG)**

On July 2, 2013, the same day that Doral and J.A.M.A. executed the amended loan agreement, they executed a security agreement-pledge ("Security Agreement 1"). Id. ¶ 23. In this agreement, J.A.M.A. agreed to deposit into a reserve account certain funds of which all rights, title, and interest were assigned and granted to the bearer, now Bautista Cayman, to secure payment and performance of the obligations set forth in the amended loan agreement. Id. ¶ 23. Security Agreement 1 was perfected in Doral's favor through the filing of a financial statement in the Department of State of Puerto Rico on July 9, 2013. Id. ¶ 24.

Also on July 2, 2013, Doral and J.A.M.A. executed a restated mortgage note pledge and security agreement ("Pledge Agreement"). Id. ¶ 25. J.A.M.A. pledged, assigned, delivered, and transferred the Mortgage Note to Doral, subsequently assigned to Bautista Cayman, on the terms and conditions set forth therein. Id.

**Personal Guarantees**

On October 7, 2008, the same day as Loan Agreement 1, J.A.M.A. subscribed a guarantee with Molina-Machargo ("Guarantee 1") and another with Jiménez and Rivera-Cano ("Guarantee 2"). Id. ¶¶ 27-28. Each jointly and severally guaranteed any outstanding monetary indebtedness under Loan Agreement 1 to Doral and its successors and assignees, up to fifty percent. Id. ¶¶ 27-28. Then on July 2, 2013, both subscribed restated guarantees, restating the same as Guarantees 1 and 2. Id. ¶ 30.

**Breach of Loan Agreement and Amounts Owed**

J.A.M.A. failed to make the agreed upon payments under the amended loan agreement. Id. ¶ 31. Hence, as of November 15, 2017, J.A.M.A. owed Bautista Cayman $3,534,246.80 under Promissory Note 2, which is composed of: (i) $2,454,393.06 in principal; (ii) $186,261.16 in accrued interests; (iii) $5,718.39 in late fees; and (iv) $6,926.22 in valuation expenses. Id. ¶ 32. This amount increases at a rate of $272.71 *per diem* in accordance with the Promissory Note 2, Loan Agreement 1, as amended, and under the other loan documents. Id. Also as of November 15, 2017, J.A.M.A. owed Bautista $480,927.97 under Promissory Note 3, Loan Agreement 1, as amended, as well as under the

other loan documents. Id. ¶ 33. Moreover, J.A.M.A. owes $400,000 in attorney's fees under the mortgage note. Id. ¶ 34. Finally, under Guarantees 1 and 2, restated on July, 2013, Molina-Machargo and Rivera-Cano owe 50% of the obligations. Id. ¶¶ 35-36.

On September 13, 2016, Bautista Cayman sent a notice of default to J.A.M.A. and declared the obligations due and payable in full. Id. ¶ 37. After issuing a notice of default, Bautista Cayman's efforts to collect outstanding amounts have failed, and as of today, Defendants have not cured the defaults detailed above. Id. ¶¶ 38-40.

### III. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado–Denis v. Castillo–Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Civil No. 16-2901 (GAG)**

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Although the First Circuit "has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules. . . . [t]his, of course, does not mean the unopposed party wins on summary judgment." Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006) (citations omitted). Instead, "that party's uncontested facts and other evidentiary facts of record must still show that the party is entitled to summary judgment." Id.

**IV.    Discussion**

As this action is brought pursuant to the Court's diversity jurisdiction under 28. U.S.C. § 1332(a) (see Docket No. 1), Puerto Rico substantive law controls. Aleman-Pacheco v. Universal Grp., Inc., 638 F. App'x 15 (1st Cir. 2016). Under Puerto Rico law, "[a] contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service." P.R. Laws Ann. tit. 31, § 3371. A loan agreement is an obligation in which "one of the parties delivers to the other . . . money or any other perishable thing, under the condition to return an equal amount of the same kind and quality." Id. § 4511. Therefore, "[a] person receiving money or any other perishable thing on loan acquires its ownership, and is bound to return to the creditor an equal amount of the same kind and quality." Id. § 4571. A creditor is entitled to full payment, and "cannot be compelled to partially receive the prestations of which the obligation consists." Id. § 3173.

**Civil No. 16-2901 (GAG)**

The Commonwealth's Mortgage and Property Registry Act of 1979 and portions of its Civil Code govern "the nature and effect of mortgages." Soto-Rios v. Banco Popular de Puerto Rico, 662 F.3d 112, 118 (1st Cir. 2011).[2] As such, "[a] mortgage directly and immediately binds an estate and the rights on which it is imposed, whoever its owner or titleholder may be, to the fulfillment of the obligation for the security of which it was constituted." P.R. LAWS ANN. tit. 30, § 2551. Under Mortgage Act of 1979, a mortgage creditor has three options for collecting a debt: (1) a personal collection action with an attachment to the debtor's real property; (2) the Summary Procedure; or (3) the ordinary procedure. P.R. Prod. Credit Assoc. v. Registrador, 123 P.R. Dec. 231, 243-44, 23 P.R. Offic. Trans 213 (1989).

The undisputed facts show that Bautista Cayman is entitled to recover the amounts owed in the promissory and mortgage notes, and to execute the mortgage on J.A.M.A.'s properties. There is no genuine issue of material fact: J.A.M.A. entered into a loan agreement, signed two promissory notes, constituted a mortgage on the two properties at issue, and defaulted on its obligations. Molina-Machargo and Rivera-Cano owe 50% of the obligations each under two guarantees. The obligations, in turn, were endorsed to Bautista Cayman. Hence, as the rightful beneficiary of J.A.M.A.'s obligations, Bautista Cayman is entitled to collect monies owed and execute the mortgaged properties.

J.A.M.A., however, challenges the amounts due. It states that determining the amount "requires a detailed loan payment history itemizing the application of the payments accrued as well as the payments received and their concept application . . . based [on] appropriate financial accounting records admissible in evidence." (Docket No. 82 at 2). J.A.M.A. cites no source to support its assertion as a matter of law. And if this assertion is intended to pass as a denial of amounts owed under Local Rule 56, it constitutes an inappropriate denial per the discussion above. As Bautista Cayman argues, it

---

[2] The Commonwealth enacted a new mortgage law in 2015, but this mortgage is covered by the 1979 law.

provided the loan agreement and promissory notes, which state that they accrue interest, and an unsworn statement under penalty of perjury detailing the amounts owed once that interest is accounted for. Docket No. 94 at 4). There is no dispute of material fact as to the total sums.

J.A.M.A. also challenges the chain of loan holders and argues that Bautista does not own the notes at issue. The argument stems from a bill of sale between the FDIC and Bautista Finance Holdings (BFH). (Docket No. 94-1). The confusion arises because the bill of sale states that the FDIC "does hereby sell, assign, convey to Bautista REO PR. Corp. *with regard to the real estate* described in Exhibit A, except those that are not real estate related, and Bautista Cayman Asset Company, with regard to *only those assets described in Exhibit A that are not real estate* related . . . ." Id. (emphasis added). Hence, J.A.M.A. argues that the FDIC transferred the relevant notes to Bautista REO, and not Bautista Cayman (Plaintiff), because, according to J.A.M.A., they were real estate related. But Bautista Cayman disagrees. It correctly points out that (1) the bill of sale conveyed assets to Bautista Cayman and (2) the notes appear endorsed to Bautista Cayman. See Docket Nos. 94-1; 94-2; 94-3. As Bautista Cayman argues, the evidence "clearly shows that the Bill of Sale, along with the endorsed notes, contemplated transfers to Bautista Cayman." (Docket No. 104 at 3). And indeed, the evidence shows that the notes were endorsed to Bautista Cayman, placing them in Bautista Cayman's possession.

V. **CONCLUSION**

Bautista Cayman's motion for summary judgment is granted. The Court shall enter judgment accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 16th day of July, 2018.

                *s/ Gustavo A. Gelpí*
                GUSTAVO A. GELPI
                United States District Judge